IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ARTHUR CHILLOUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:16-cv-0001-TFM |
| | ) | [wo] |
| NANCY A. BERRY HILL,[1] | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

### **MEMORANDUM OPINION AND ORDER**

On November 2, 2012, Arthur Chillous ("Plaintiff" or "Chillous") applied for a period of disability, disability insurance benefits, and Supplemental Security Income (SSI) benefits. (Tr. 191-196, 199-202). These applications were denied by hearing decision issued June 25, 2014. (Tr. 19-33). The Appeals Council denied Plaintiff's request for review on December 5, 2015. (Tr. 3). As a result, the ALJ's decision became the final decision of the Commissioner of Social Security ("Commissioner"). *Id.* Judicial review proceeds pursuant to 42 U.S.C. § 405(g); 1383(c)(3). After careful scrutiny of the record and briefs, for reasons herein explained, the Court AFFIRMS the Commissioner's decision.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I. NATURE OF THE CASE

Chillous seeks judicial review of the Commissioner's decision denying his application for disability insurance benefits. United States District Courts may conduct limited review of such decisions to determine whether they comply with applicable law and are supported by substantial evidence. 42 U.S.C. § 405. The Court may affirm, reverse and remand with instructions, or reverse and render a judgment. *Id.*

## II. STANDARD OF REVIEW

Judicial review of the Commissioner's decision to deny benefits is narrowly circumscribed. The court reviews a social security case solely to determine whether the Commissioner's decision is supported by substantial evidence and based upon proper legal standards. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner," but rather "must defer to the Commissioner's decision if it is supported by substantial evidence." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1997) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Winschel*, 631 F.3d at 1178 (stating the court should not re-weigh the evidence). This court must find the Commissioner's decision conclusive "if it is supported by substantial evidence and the correct legal standards were applied." *Kelley v. Apfel*, 185 F.3d 1211, 1213 (11th Cir. 1999); *see also Kosloff v. Comm'r of Soc. Sec.*, 581 Fed. Appx. 811, 811 (11th Cir. 2015) (citing *Kelley*).

Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence

as a reasonable person would accept as adequate to support the conclusion.  *Winschel*, 631 F.3d at 1178 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *Lewis v. Callahan*, 125 F.3d 1436, 1440 (citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L.Ed.2d 842 (1971)).  If the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence preponderates against the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *see also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) ("even if the evidence preponderates *against* the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence.") (citation omitted).  The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986)).

The district court will reverse a Commissioner's decision on plenary review if the decision applies incorrect law, or if the decision fails to provide the district court with sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 1066 (11th Cir. 1994) (internal citations omitted).  There is no presumption that the Secretary's conclusions of law are valid.  *Id.*; *Brown v. Sullivan*, 921 F.2d 1233, 1236 (11th Cir. 1991).

### III.  STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act's general disability insurance benefits program ("DIB")

provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence.[2] *See* 42 U.S.C. § 423(a).  The Social Security Act's Supplemental Security Income ("SSI") is a separate and distinct program.  SSI is a general public assistance measure providing an additional resource to the aged, blind, and disabled to assure that their income does not fall below the poverty line.[3]  However, despite the fact they are separate programs, the law and regulations governing a claim for DIB and a claim for SSI are identical; therefore, claims for DIB and SSI are treated identically for the purpose of determining whether a claimant is disabled. *Patterson v. Bowen*, 799 F.2d 1455, 1456 n. 1 (11th Cir. 1986).  Applicants under DIB and SSI must provide "disability" within the meaning of the Social Security Act which defines disability in virtually identical language for both programs.  *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a).  A person is entitled to disability benefits when the person is unable to

> Engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.  42

---

[2]    DIB is authorized by Title II of the Social Security Act, and is funded by Social Security taxes. *See* Social Security Administration, Social Security Handbook, § 136.1, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

[3]    SSI benefits are authorized by Title XVI of the Social Security Act and are funded by general tax revenues.  *See* Social Security Administration, Social Security Handbook, §§ 136.2, 2100, *available at* http://www.ssa.gov/OP_Home/handbook/handbook.html

U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Commissioner utilizes a five-step, burden-shifting analysis to determine when claimants are disabled.  20 C.F.R. §§ 404.15204; *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004); *O'Neal v. Comm'r of Soc. Sec.*, 614 Fed. Appx. 456, 2015 U.S. App. LEXIS 9640, 2015 WL 3605682 (11th Cir. June 10, 2015).  The ALJ determines:

(1) Whether the claimant is currently engaged in substantial gainful activity;

(2) Whether the claimant has a severe impairment or combination of impairments;

(3) Whether the impairment meets or exceeds one of the impairments in the listings;

(4) Whether the claimant can perform past relevant work; and

(5) Whether the claimant can perform other work in the national economy.

*Winschel*, 631 F.3d at 1178; *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  When a claimant is found disabled – or not – at an early step, the remaining steps are not considered. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).  This procedure is a fair and just way for determining disability applications in conformity with the Social Security Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S. Ct. 2287, 2297, 96 L.Ed.2d 119 (1987) (citing *Heckler v. Campbell*, 461 U.S. 458, 461, 103 S. Ct. 1952, 1954, 76 L.Ed.2d 66 (1983)) (The use of the sequential evaluation process "contribute[s] to the uniformity and efficiency of disability determinations").

The burden of proof rests on the claimant through Step 4.  *See Ostborg v. Comm'r of*

---

4 For the purposes of this appeal, the Court utilizes the versions effective until March 27, 2017 as that was the version in effect at the time fo the ALJ's decision and the filing of this appeal.

*Soc. Sec.*, 610 Fed. Appx. 907, 915 (11th Cir. 2015); *Phillips*, 357 F.3d at 1237-39.  A *prima facie* case of qualifying disability exists when a claimant carries the Step 1 through Step 4 burden.  Only at the fifth step does the burden shift to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id.*

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functioning Capacity ("RFC").  20 C.F.R. § 404.1520(a)(4).  RFC is what the claimant is still able to do despite the impairments, is based on all relevant medical and other evidence, and can contain both exertional and nonexertional limitations.  *Phillips*, 357 F.3d at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id.* at 1239.  In order to do this, the ALJ can either use the Medical Vocational Guidelines5 ("grids") or call a vocational expert.  *Id.* at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each of these factors can independently limit the number of jobs realistically available to an individual. *Id.* at 1240.  Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled."  *Id.*  Otherwise, the ALJ may use a vocational expert.  *Id.*  A vocational expert is an expert on the kinds of jobs an individual can perform based on her capacity and impairments.  *Id.*  In order for a vocational expert's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the

claimant's impairments. *Jones v. Apfel*, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing *McSwain v. Bowen*, 814 F.2d 617, 619-20 (11th Cir. 1987)).

## IV. ADMINISTRATIVE FINDINGS AND CONCLUSIONS

Plaintiff was 51 years old at the time of the administrative decision (Tr. 47). He has an eleventh grade education. *Id.* The ALJ found Plaintiff had past relevant work as a brush painter, janitor, warehouse worker, and construction worker. (Tr. 31, 231-33, 254).

## V. MEDICAL HISTORY

Plaintiff was treated for left elbow pain after lifting a heavy object on January 27, 2011. (Tr. 323). Dr. James Thomas diagnosed Plaintiff with uncontrolled diabetes, neuropathy of the feet, a rash, and left lateral epicondylitis. (Tr. 324). On February 23, 2011, Plaintiff refused insulin treatment for uncontrolled diabetes, and he was advised to monitor his diet and exercise. (Tr. 326). On October 11, 2011, Dr. Erik Lessman treated Plaintiff for uncontrolled diabetes, hypercholesterolemia, a rash, and chronic low back pain. (Tr. 301-303). Dr. Lessman noted non-compliance with Actos, and noted Plaintiff's back pain had improved with physical therapy. (Tr. 301). On November 1, 2011, Dr. Lessman noted normal gait, and normal tone and strength. (Tr. 305).

On March 13, 2012, an MRI of the lumbar spine revealed degenerative joint disease (DJD) at L4-5 (Tr. 310). On April 19, 2012, Dr. Lessman noted tenderness and spasm in the low back with ataxic gait. (Tr. 308). Plaintiff was advised to exercise at home and he was prescribed Lortab. (Tr. 308-309). Non-compliance with diabetic medication was noted, and Plaintiff received an insulin injection. (Tr. 311, 313-314). On August 17, 2012, Dr. Lessman

---

5     *See* 20 C.F.R. pt. 404 subpt. P, app. 2

noted Plaintiff had "mild" central stenosis at L4-5. (Tr. 316). Plaintiff reported an increase in back pain with numbness in his arm and legs. (Tr. 316). Plaintiff was prescribed Ultracet. (Tr. 318). In December 2012, Dr. Lessman noted recurrent headaches, low back pain, and numbness in the right hand and foot. (Tr. 446-447). Non-compliance with medication was noted. (Tr. 447).

On January 18, 2013, Dr. Celtin Robertson examined Plantiff. (Tr. 379-383). Plaintiff stated he had a "herniated disc" and that he had not worked for 8 years since a car accident. (Tr. 379, 380). On examination, Dr. Robertson noted a slow gait with the ability to heel-toe walk. (Tr. 382). Severe tenderness was noted in the central lumbar region. (Tr. 382). Plaintiff exhibited 5/5 motor strength and normal grip strength. (Tr. 383). Dr. Robertson diagnosed back pain and chronic migraines, and indicated Plaintiff would have significant difficulty with sitting, standing, walking, traveling, lifting and carrying. (Tr. 383).

On January 24, 2013, Plaintiff underwent a psychological evaluation performed by Dr. Curry Hammack. (Tr. 385-388). Dr. Hammack noted some symptoms of depression with limited concentration, poor memory, and limited judgment. (Tr. 387). Dr. Hammack diagnosed Plaintiff with adjustment disorder with depressed mood, chronic. (Tr. 388). Dr. Hammack estimated borderline intellectual functioning. (Tr. 388). Dr. Hammack indicated moderate limitations on being able to deal with supervisory figures and the general public and opined that his social paranoia would pose more significant restrictions. (Tr. 387). Dr. Hammack noted Plaintiff's cognitive functioning would pose moderate to significant limitations on remembering and carrying out multi-part instructions. (Tr. 387).

On February 10, 2013, Dr. Thomas Kincer noted headaches and a toothache. (Tr. 442-444). On January 8, 2014, Dr. Timothy Morrow had to insert a catheter for urine retention. (Tr. 389-390). On January 31, 2014, a nurse at Health Services Incorporated noted Plaintiff had mild depression, and counseled him about diet. (Tr. 454, 456).

On February 8, 2013, Brandon Hudson, a non-medical source, reviewed the evidence and completed an assessment. (Tr. 96-103). On February 8, 2013, Dr. Robert Estock, a state agency psychiatrist, reviewed the evidence and concluded Plaintiff had a severe mental impairment due to depression and borderline intellectual functioning. (Tr. 96-105). Dr. Estock concluded Plaintiff could perform simple instructions, and sustain attention/concentration for extended periods. (Tr. 104-105). Dr. Estock indicated Plaintiff should avoid quick decision making, rapid changes, and multiple demands. (Tr. 104).

## VI. Issues

Chillous raises three issues for review. They are as follows:

1. The ALJ erred by failing to give appropriate weight to the opinions of two consultative examiners, and by failing to properly explain his reasons for the weight he assigned.

2. The ALJ erred in substituting his opinion for the opinion of the consulting psychologist.

3. The ALJ erred in failing to consider evidence submitted post hearing.

## VII. Analysis

Plaintiff argues that the ALJ erred by failing to give appropriate weight to the opinions of two consultative examiners, and by failing to properly explain his reasons for the weight

he assigned.  Also, Plaintiff argues that the ALJ erred in substituting his opinion for the opinion of the consulting psychologist.  The ALJ found the claimant to have severe impairments, including diabetes, controlled, possible mild central canal stenosis, lumbar spine; possible peripheral autonomic neuropathy, due to diabetes, without confirmatory testing.  The ALJ further found:

> The claimant also has the following non-severe impairments: adjustment disorder, with depressed mood; rule out major depressive disorder; rule out cognitive disorder, not otherwise specified; estimated borderline intellectual functioning; infrequent urinary retention, requiring dilation; history of enlarged prostate; and hyperlipidemia.

(Tr. 25).  The ALJ further found the claimant has the residual functional capacity to perform a range of light work, and is therefore, not disabled.  (Tr. 26-27, 33).  The ALJ's finding must be supported by substantial evidence.  "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion."  *Moore v. Barnhart,* 405 F.3d 1208, 1211 (11th Cir. 2005) (citations omitted).

In making this finding, the ALJ discounted the opinion of consulting physician Dr. Celtin Robertson and stated that Robertson's assessment "account[ed] for the most significant limitation consistent with the medical and objective evidence of record."  (Tr. 29).  The law is clear; "[t]he opinion of a treating physician is to be given substantial weight in determining disability" and it is reversible error for an ALJ to give a consultative examination greater weight than that of a treating physician.  *See Hillsman v. Bowen*, 804 F.2d 1179, 1181-1182 (11th Cir. 1986).  In so concluding the ALJ summarized Plaintiff's medical records of treating physicians from Montgomery Family Medicine dated September 17, 2012 through January 14, 2014 and noted "[h]is gate was normal and inspection of the

lumbar spine revealed normal lumbar lordosis with no tenderness to palpation. Range of motion of the lumbar spine was painful with full flexion." (Tr. 29). The ALJ also summarized Plaintiff's medical records from Health Services and noted "[t]here was no mention of musculoskeletal pain or limitation. There were also no such findings." (Tr. 30). Finally, the ALJ summarized medical records from Dr. Timothy Morrow dated January 8, 2014 through February 11, 2014 and stated

> Dr. Morrow noted the claimant's neck spasms and gave him some Flexeril. He advised the claimant that it should clear up quickly (Id. at 1). The claimant did not report and the doctor did not note any impairment or limitation come remotely close to the limitation suggested by the consultant physician.

(Tr. 30). The Court has independently reviewed the record and concludes that the ALJ's decision is supported by the medical records. Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion which discounted Dr. Robertson's consulting opinion concluding Plaintiff was disabled. *Moore,* 405 F.3d at 1211.

The ALJ gave the opinion of Dr. Hammack, a consulting psychologist, "some weight", but concluded that "based on the global assessment function score of 55, the claimant should be able to work." (Tr. 31). Although Plaintiff does not point to the opinion of State agency psychiatrist, Robert Estock, M.D., the Court notes that the ALJ duly considered it as well and has "given it little weight as it is inconsistent with the case at hand." (Tr. 31). In so concluding, the ALJ stated as follows:

> the medical evidence at hand does not indicate that the claimant would have a mental deficit. There is no dedicated mental healthcare of record and the claimant's presentation before his physicians never warranted suggestion or referral for mental healthcare.

*Id.*

The Court has independently reviewed the medical records in this case and concludes that the ALJ's decision is supported by the medical records. Indeed, the Court notes that the records from Montgomery Family Medicine state that Plaintiff "has appropriate judgment . . . good insight. Recent memory is . . . intact. Remote memory is . . . intact. Patient's mood is euthymic. Appropriate affect is observed." (Tr. 412). Accordingly, the Court concludes that substantial evidence supports the ALJ's conclusion which discounted the consulting opinions of Dr. Hammack and Dr. Estock concluding Plaintiff was disabled due to psychiatric issues. *Moore,* 405 F.3d at 1211.

Finally, Plaintiff argues that the ALJ erred in failing to consider the evidence the MRI report submitted after the administrative hearing. The Court concludes that the MRI report was merely cumulative of evidence previously considered by the ALJ from the Montgomery Family Medicine. (Tr. 310-316). Specifically, the records state that the "MRI of the lower lumber spine shows DJD at the level of L4-L5." (Tr. 310). These records formed the basis of the ALJ's conclusion that Plaintiff had a severe impairment due to possible mild central canal stenosis of the lumbar spine and was limited to the performance of light work with additional restrictions. (Tr. 26-31). Accordingly, the Court concludes this argument has no merit and that the opinion of the ALJ is due to be affirmed.

### IX. CONCLUSION

Pursuant to the findings and conclusions detailed in this Memorandum Opinion, the Court concludes that the ALJ's non-disability determination is supported by substantial evidence and proper application of the law. It is, therefore, **ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment is entered herewith.

DONE this 31st day of March, 2017.

>/s/ Terry F. Moorer
>TERRY F. MOORER
>UNITED STATES MAGISTRATE JUDGE